Prober & Raphael, A Law Corporation
Dean Prober, Esquire, #106207
Lee S. Raphael, Esquire, #180030
Cassandra J. Richey, Esquire #155721
David F. Makkabi, Esquire #249825
P.O. Box 4365
Woodland Hills, CA 91365-4365
(818) 227-0100
F.040-1740
Attorneys for Secured Creditor U.S. Bank, N.A. its Successors and/or Assigns

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Bk. No. 10-11872 |
| | ) | |
| STACEY ANNETTE MCDORMAN, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | R.S. No. DRP – 805 |
| ——————————————— | ) | |
| | ) | |
| | ) | |
| | ) | Hearing- |
| | ) | Date : August 12, 2010 |
| | ) | Time : 9:00 AM |
| | ) | Place : U.S. Bankruptcy Court |
| | ) | 99 South E Street |
| | ) | Santa Rosa, California |
| ——————————————— | ) | Courtroom (bkcy) |

EXHIBIT "B"

IN SUPPORT OF U.S. BANK, N.A. ITS SUCCESSORS AND/OR ASSIGNS'

MOTION FOR RELIEF FROM AUTOMATIC STAY

Attachment 2 of 4, "Deed of Trust", containing 32 pages, *inclusive* of this cover page.

-1-

Recording Requested By:
**PRIVATE MORTGAGE ADVISORS,
LLC**

Return To:
**WFHM FINAL DOCS X9999-01M**

**1000 BLUE GENTIAN ROAD
EAGAN, MN 55121**
Prepared By:
**PRIVATE MORTGAGE ADVISORS,
LLC**

**16644 WEST BERNARDO DR., STE
101, SAN DIEGO, CA**

2006-09087
Recorded at the request of
DOCUMENT PROCESS SOLUTIONS
05/09/2006 02:49P
Fee: 88.00 No of Pages: 28

OFFICIAL RECORDS
Marsha A Wharff, Clerk-Recorder
Mendocino County, CA

2006-09087
Pg: 1/28

——————————[Space Above This Line For Recording Data]——————————

*1 L 4 2 3801-710-004*  **DEED OF TRUST**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **APRIL 27, 2006**
together with all Riders to this document.

(B) **"Borrower"** is STACEY A. MCDORMAN, ~~A SINGLE PERSON~~ AN UNMARRIED WOMAN

*See Exhibit "A" attached*

Borrower is the trustor under this Security Instrument.

(C) **"Lender"** is **PRIVATE MORTGAGE ADVISORS, LLC**

Lender is a **LIMITED LIABILITY COMPANY**
organized and existing under the laws of **THE STATE OF DELAWARE**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01

-6(CA) (0005)
Page 1 of 16          Initials: *EMC*

VMP MORTGAGE FORMS - (800)521-7291

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 1 of 28
Order: 100041863 Comment:

Exhibit B

Lender's address is P.O. BOX 17339, BALTIMORE, MD 212971339

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is FIDELITY NATIONAL TITLE INS CO
17911 VON KARMAN, SUITE 200, IRVINE, CA 92614
**(E) "Note"** means the promissory note signed by Borrower and dated APRIL 27, 2006
The Note states that Borrower owes Lender TWO HUNDRED TWENTY FIVE THOUSAND AND 00/100
                                                                    Dollars
(U.S. $ ****225,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than MAY 01, 2036
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☑ Other(s) [specify] |

*See attached Riders*

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

2006-09087
Pg:2/28

Case: 10-11872     Doc# 12-5     Filed: 07/09/10     Entered: 07/09/10 13:37:26     Page 3 of 32

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                    of MENDOCINO                                    :
      [Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]
LEGAL ATTACHED HERETO AND MADE A PART THEREOF:

Parcel ID Number: 160-140-19                                    which currently has the address of
1960 FOOTHILL DRIVE                                    [Street]
REDWOOD VALLEY                                    [City], California 95470                                    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP®-6(CA) (0005)                                    Page 3 of 15                                    Initials: _SMC_                                    Form 3005  1/01

2006-09087
Pg:3/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 3 of 28
Order: 100041863 Comment:

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

VMP®-6(CA) (0005)          Page 4 of 15          Initials:           Form 3005   1/01

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 4 of 28
Order: 100041863 Comment:

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

2006-09087
Pg: 5/28

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP®-6(CA) (0005)    Page 6 of 15    Initials: _SMC_    Form 3005   1/01

**2006-09087**
**Pg:6/28**

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 6 of 28
Order: 100041863 Comment:

Case: 10-11872    Doc# 12-5    Filed: 07/09/10    Entered: 07/09/10 13:37:26    Page 7 of 32

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 7 of 28
Order: 100041863 Comment:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

2006-09087
Pg : 8/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 8 of 28
Order: 100041863 Comment:

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



-6(CA) (0005)

Page 9 of 15

Initials: _SMC_

Form 3005   1/01

**2006-09087**
**Pg: 9/28**

Description: Mendocino, CA Document-Year DocId 2006.9087 Page: 9 of 28
Order: 100041863 Comment:

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

2006-09087
Pg: 10/28

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 11 of 28
Order: 100041863 Comment:

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(CA) (0005)

Page 12 of 15

Initials: _Smc_

Form 3005  1/01

**2006-09087**
**Pg: 12/28**

Description: Mendocino,CA Document-Year DocId 2006.9087 Page: 12 of 28
Order: 100041863 Comment:

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

2006-09087
Pg: 13/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 13 of 28
Order: 100041863 Comment:

Case: 10-11872    Doc# 12-5    Filed: 07/09/10    Entered: 07/09/10 13:37:26    Page 14 of 32

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   STACEY A. MCDORMAN                  -Borrower

_____          _____ (Seal)
                                                                      -Borrower

_____ (Seal)   _____ (Seal)
              -Borrower                                               -Borrower

_____ (Seal)   _____ (Seal)
              -Borrower                                               -Borrower

_____ (Seal)   _____ (Seal)
              -Borrower                                               -Borrower



2006-09087
Pg:14/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 14 of 28
Order: 100041863 Comment:

Case: 10-11872    Doc# 12-5    Filed: 07/09/10    Entered: 07/09/10 13:37:26    Page 15
of 32

State of California
County of *Mendocino*

On *May 2, 2006* before me, *Evan P. Hennessey, Notary Public*,

} ss.

personally appeared

STACEY A. MCDORMAN

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

EVAN P. HENNESSEY
COMM. # 1364524
NOTARY PUBLIC-CALIFORNIA
MENDOCINO COUNTY
COMM. EXP. JULY 26, 2006

*VMP* -6(CA) (0005)          Page 15 of 15          Initials: _____          Form 3005   1/01

2006-09087
Pg: 15/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 15 of 28
Order: 100041863 Comment:



# Exhibit A

**DESCRIPTION:**

THE FOLLOWING DESCRIBED PROPERTY IN THE UNINCORPORATED AREA OF REDWOOD VALLEY, COUNTY OF MENDOCINO, STATE OF CALIFORNIA:

PARCEL ONE: BEGINNING AT THE NORTHWEST CORNER OF THE LANDS CONVEYED TO TOMMY KENT AMES, ET AL, BY DEED RECORDED JANUARY 21,1966 IN BOOK 708 OFFICIAL RECORDS, PAGE 204, MENDOCINO COUNTY; THENCE NORTH 89 DEGREES 56 MINUTES 40 SECONDS WEST, 106.77 FEET, MORE OR LESS TO A POINT WHICH IS SOUTH 89 DEGREES 56 MINUTES 40 SECONDS EAST, AND EQUIDISTANT FROM SAID NORTHWEST CORNER OF AMES AND FROM THE NORTHEAST CORNER OF THE LANDS CONVEYED TO ALRIK J. MONSTROM, ET UX, BY DEED RECORDED NOVEMBER 14,1963 IN BOOK 643 OFFICIAL RECORDS, PAGE 116, MENDOCINO COUNTY; THENCE SOUTHERLY ON A LINE WHICH IS EQUIDISTANT FROM THE EAST LINE OF SAID MONSTROM PROPERTY AND THE WEST LINE OF SAID AMES PROPERTY, 458 FEET, MORE OR LESS TO A POINT ON THE SOUTH LINE OF THE LANDS OF ADAMS AS DESCRIBED IN THE DEED OF TRUST, RECORDED IN BOOK 744, PAGE 492, OFFICIAL RECORDS OF MENDOCINO COUNTY, WHICH POINT IS EQUIDISTANT FROM THE SOUTHEAST CORNER OF SAID MONSTROM PROPERTY AND THE SOUTHWEST CORNER OF SAID AMES PROPERTY; THENCE SOUTH 89 DEGREES 36 MINUTES 50 SECONDS EAST, 106 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF SAID LANDS OF AMES; THENCE NORTH 0 DEGREES 23 MINUTES 10 SECONDS EAST, 458.97 FEET ALONG THE EAST LINE OF SAID AMES PROPERTY TO THE POINT OF BEGINNING.

PARCEL TWO: AN EASEMENT OR RIGHT OF WAY, FOR INGRESS AND EGRESS OVER AND ALONG THE FOLLOWING DESCRIBED REAL PROPERTY: BEGINNING AT THE SOUTHWEST CORNER OF LOT 10, OF THE SAID VALLEY ACRES, A SUBDIVISION; THENCE NORTH 89 DEGREES 36 MINUTES 50 SECONDS WEST, TO THE SOUTHWEST CORNER OF THE ABOVE DESCRIBED PROPERTY; THENCE SOUTH 0 DEGREES 23 MINUTES 10 SECONDS WEST, 50.00 FEET; THENCE SOUTH 89 DEGREES 36 MINUTES 50 SECONDS EAST, 779.20 FEET; THENCE ALONG A CURVE TO THE RIGHT, WITH A RADIUS OF 25 FEET, THROUGH AN ANGLE OF 90 DEGREES , A DISTANCE OF 39.27 FEET TO A POINT IN THE WEST TINE OF THE COUNTY ROAD; THENCE NORTH 0 DEGREES 23 MINUTES 10 SECONDS EAST, 100 FEET; THENCE ALONG A CURVE TO THE RIGHT, FROM A TANGENT WHICH BEARS SOUTH 0 DEGREES 23 MINUTES 10 SECONDS WEST, WITH A RADIUS OF 25 FEET, THROUGH AN ANGLE OF 90 DEGREES, A DISTANCE OF 39.27 FEET; THENCE NORTH 89 DEGREES 36 MINUTES 50 SECONDS WEST, 353.10 FEET TO THE POINT OF BEGINNING.

PARCEL THREE: TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR ALL ROAD AND UTILITY PURPOSES, 14 FEET WIDE LYING 7 FEET EACH SIDE OF THE WEST LINE OF THE ABOVE DESCRIBED PARCEL ONE AND EXTENDING THE FULL LENGTH THEREOF. EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCEL ONE.

APN: 160-140-19



2006-09087
Pg: 16/28

Record and Return [ ] by Mail [ ] by Pickup to:

WFHM FINAL DOCS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

## MANUFACTURED HOME RIDER TO SECURITY INSTRUMENT

This Rider is made this   APRIL 27, 2006   , and is incorporated into and amends and supplements the Mortgage, Open-End Mortgage, Deed of Trust, or Credit Line Deed of Trust, Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to PRIVATE MORTGAGE ADVISORS, LLC

("Note") and covering the Property described in the Security Instrument and located at:
1960 FOOTHILL DRIVE, REDWOOD VALLEY, CA 95470
("Lender") of the same date
                                  (Property Address)

Borrower and Lender agree that the Security Instrument is amended and supplemented to read as follows:

1. **Meaning of Some Words.** As used in this Rider, the term "Loan Documents" means the Note, the Security Instrument and any Construction Loan Agreement, and the term "Property", as that term is defined in the Security Instrument, includes the "Manufactured Home" described in paragraph 3 of this Rider. All terms defined in the Note or the Security Instrument shall have the same meaning in this Rider.

2. **Purpose and Effect of Rider.** IF THERE IS A CONFLICT BETWEEN THE PROVISIONS IN THIS RIDER AND THOSE IN THE SECURITY INSTRUMENT, THE PROVISIONS IN THIS RIDER SHALL CONTROL. THE CONFLICTING PROVISIONS IN THE SECURITY INSTRUMENT WILL BE ELIMINATED OR MODIFIED AS MUCH AS IS NECESSARY TO MAKE ALL OF THE CONFLICTING TERMS AGREE WITH THIS RIDER.

3. **Lender's Security Interest.** All of Borrower's obligations secured by the Security Instrument also shall be secured by the Manufactured Home:

| USED | 1978 | SKYLINE | SKYLINE 819 | 048 x 024 |
|------|------|---------|-------------|-----------|
| New/Used | Year | Manufacturer's Name | Model Name or Model No. | Length x Width |
| 0447 AN | | 0447 AN | | |
| Serial No. | | Serial No. | Serial No. | Serial No. |

Page 1 of 3   Initial: *Sm̃*
NMFL # 7109 (MAHR) Rev 02/06

2006-09087
Pg : 17/28

4. **Affixation.** Borrower covenants and agrees:
   (a) to affix the Manufactured Home to a permanent foundation on the Property;
   (b) to comply with all Applicable Law regarding the affixation of the Manufactured Home to the Property;
   (c) upon Lender's request, to surrender the certificate of title to the Manufactured Home, if surrender is permitted by Applicable Law, and to obtain the requisite governmental approval and documentation necessary to classify the Manufactured Home as real property under Applicable Law;
   (d) that affixing the Manufactured Home to the Property does not violate any zoning laws or other local requirements applicable to the Property;
   (e) that the Manufactured Home will be, at all times and for all purposes, permanently affixed to and part of the Property.

5. **Charges; Liens.** Section 4, Paragraph 1 of the Security Instrument is amended to add a new third sentence to read:
   > Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph and receipts evidencing the payments.

6. **Property Insurance.** Section 5, Paragraph 1 of the Security Instrument is amended to add a new second sentence to read:
   > Whenever the Manufactured Home is transported on the highway, Borrower must have trip insurance.

7. **Notices.** The second sentence of Section 15 of the Security Instrument is amended by inserting the words "unless otherwise required by law" at the end.

8. **Additional Events of Default.** Borrower will be in default under the Security Instrument:
   (a) if any structure on the Property, including the Manufactured Home, shall be removed, demolished, or substantially altered;
   (b) if Borrower fails to comply with any requirement of Applicable Law (Lender, however, may comply and add the expense to the principal balance Borrower owes to Lender); or
   (c) if Borrower grants or permits any lien on the Property other than Lender's lien, or liens for taxes and assessments that are not yet due and payable.

9. **Notice of Default.** If required by Applicable Law, before using a remedy, Lender will send Borrower any notice required by law, and wait for any cure period that the law may require for that remedy.

10. **Additional Rights of Lender in Event of Foreclosure and Sale.** In addition to those rights granted in the Note and Security Instrument, Lender shall have the following rights in the event Lender commences proceedings for the foreclosure and sale of the Property.
   (a) At Lender's option, to the extent permitted by Applicable Law, Lender may elect to treat the Manufactured Home as personal property ("Personal Property Collateral"). Lender may repossess peacefully from the place where the Personal Property Collateral is located without Borrower's permission. Lender also may require Borrower to make the Personal Property Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and Borrower. At Lender's option, to the extent permitted by Applicable Law, Lender may detach and remove Personal Property Collateral from the Property, or Lender may take possession of it and leave it on the Property. Borrower agrees to cooperate with Lender if Lender exercises these rights.

2006-09087
Pg: 18/28

(b) After Lender repossesses, Lender may sell the Personal Property Collateral and apply the sale proceeds to Lender's reasonable repossession, repair, storage, and sale expenses, and then toward any other amounts Borrower owes under the Loan Documents

(c) In the event of any foreclosure sale, whether made by Trustee, or under judgment of a court, all of the real and Personal Property Collateral may, at the option of Lender, be sold as a whole or in parcels. It shall not be necessary to have present at the place of such sale the Personal Property Collateral or any part thereof. Lender, as well as Trustee on Lender's behalf, shall have all the rights, remedies and recourse with respect to the Personal Property Collateral afforded to a "Secured Party" by Applicable Law in addition to, and not in limitation of, the other rights and recourse afforded Lender and/or Trustee under the Security Instrument.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Rider.

WITNESS my hand and seal this _2nd_ day of _May, 2006_ .

_(signature)_ _____          _____
Borrower                                          Borrower

STACEY A. MCDORMAN
_____                          _____
Printed Name                                      Printed Name

_____                          _____
Borrower                                          Borrower

_____                          _____
Printed Name                                      Printed Name

STATE OF _California_ )
                      ) ss.:
COUNTY OF _Mendocino_ )

On the _2nd_ day of _May_ in the year _2006_ before
me, the undersigned, a Notary Public in and for said State, personally appeared
_Stacey A. McDorman_
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument.

_Evan P. Hennessey_ (signature)                 Notary Public; State of _California_
Notary Signature

_Evan P. Hennessey_                              Qualified in the County of _Mendocino_
Notary Printed Name

My commission expires: _7/26/06_

Official Seal:   [seal: EVAN P. HENNESSEY / COMM. # 1366524 / NOTARY PUBLIC CALIFORNIA / MENDOCINO COUNTY / COMM. EXP. JULY 26, 2006]

Drafted By: **STACEY A. MCDORMAN**                [ ] Check if Construction Loan

Loan Number: 0064154719

# Evan P. Hennessey,

2006-09087
Pg:19/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 19 of 28
Order: 100041863 Comment:

Record and Return [ ] by Mail [ ] by Pickup to:
WFHM FINAL DOCS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

## REAL PROPERTY AND MANUFACTURED HOME LIMITED POWER OF ATTORNEY

(To execute or release title, mortgage or deed of trust, security filing, transfer of equity and insurance documents and proceeds.)

The undersigned borrower(s), whether one or more, each referred to below as "I" or "me," residing at:

1960 FOOTHILL DRIVE
_____
Street Address

REDWOOD VALLEY, CA 95470, _____ ("Present Address").
City, State Zip, County

I am the Buyer/Owner of the following manufactured home (the "Manufactured Home"):

| USED | 1978 | SKYLINE | SKYLINE 819 | 048 x 024 |
|------|------|---------|-------------|-----------|
| New/Used | Year | Manufacturer's Name | Model Name or Model No. | Length x Width |
| 0447 AN | | 0447 AN | | |
| Serial No. | | Serial No. | Serial No. | Serial No. |

permanently affixed to the real property located at 1960 FOOTHILL DRIVE
_____
Street Address

REDWOOD VALLEY, MENDOCINO, CA 95470 _____ ("Property Address") and as more
City, County, State Zip

Page 1 of 4    Initial: _SMC_

NMFL # 711C (MALA) Rev 02/06

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 20 of 28
Order: 100041863 Comment:

particularly described on Exhibit A attached hereto (the "Real Property"). I do hereby irrevocably make, constitute, appoint and authorize with full powers of substitution, **PRIVATE MORTGAGE ADVISORS, LLC**
("Lender"), its successors, assigns or designees as my agent and attorney-in-fact, in my name, place and stead in any way which I could do, if I were personally present, with full power of substitution and delegation, (1) to complete, execute and deliver, in my name or Lender's name, any and all forms, certificates, assignments, designations, releases or other documentation as may be necessary or proper to implement the terms and provisions of the Security Instrument dated **APRIL 27, 2006** executed by me in favor of Lender, (2) to complete, execute and deliver, in my name or in Lender's name, any and all forms, certificates, assignments, designations, releases or other documentation as may be necessary or proper to make application for and obtain the certificate of title for the Manufactured Home and to have Lender (or its designee) designated as lienholder on the certificate of title for the Manufactured Home, (3) to complete, execute and deliver in my name or Lender's name, any and all forms, certificates, assignments, designations, releases or other documentation as may be necessary or proper to have the Manufactured Home treated as real estate for any and all purposes under state law, including but not limited to the surrender of any certificate of title, any election to treat the Manufactured Home as real estate for tax purposes or to meet any other requirements in order for the loan/financing secured by the Manufactured Home and the Real Property to be eligible for sale on the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Association ("Freddie Mac") or any other secondary market purchaser, (4) to receive, complete, execute or endorse, and deliver in my name or Lender's name any and all claim forms, agreements, assignments, releases, checks, drafts or other instruments and vehicles for the payment of money, relating to any insurance covering the Manufactured Home, the indebtedness secured by the Manufactured Home or the Real Property, and (5) to complete, sign and file, without my signature, such financing and continuation statements, amendments, and supplements thereto, mortgages, deeds of trust and other documents, including releases of these items, which I may from time to time deem necessary to perfect, preserve and protect Lender's security interest in the Manufactured Home, the Property and any other property sold with it. I acknowledge that at the time this Power of Attorney and my Security Instrument and any of the forms, certificates, assignments, designations, releases or other documentation are prepared the serial number of the manufactured housing unit may not be available or may be inaccurate. The manufactured housing unit may be a factory order in the process of being constructed. Immediately, upon Lender's receipt of the serial number, I understand and agree that the above items may be completed and/or corrected by Lender to properly disclose all the applicable home identifications, including the serial number. I understand that I will be provided with a copy of any corrected agreement.

To induce any third party to act hereunder, I hereby agree that any third party receiving a duly executed copy or facsimile of this instrument may act hereunder, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to indemnify and hold harmless any such third party from and against any and all claims that may arise against such third party by reason of such third party having relied on the provisions of this instrument. I have given this Limited Power of Attorney in connection with a loan/financing to be given by Lender and to induce Lender to make the financing available. It is coupled with an interest in the transaction and is irrevocable. This Limited Power of Attorney shall not be affected by my (our) subsequent incapacity, disability, or incompetence. I do further grant unto Lender full authority and power to do and perform any and all acts necessary or incident to the execution of the powers herein expressly granted, as fully as I might or could do if personally present.

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 21 of 28
Order: 100041863 Comment:

WITNESS my hand and seal this _2nd_ day of _May 2006_

Borrower
**STACEY A. MCDORMAN**

Witness

Borrower

Witness

Borrower

Witness

Borrower

Witness

STATE OF _California_ )
COUNTY OF _Mendocino_ ) ss.:

On the _2nd_ day of _May_ in the year _2006_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Stacey A. McDorman_ personally known to me ~~or proved to me on the basis of satisfactory evidence~~ to be the individual(s) whose name(s) (is)(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary Signature

_Evan P. Hennessey_
Notary Printed Name

Notary Public; State of _California_

Qualified in the County of _Mendocino_

My commission expires: _7/26/06_

Official Seal: EVAN P. HENNESSEY
COMM. # 1366524
NOTARY PUBLIC-CALIFORNIA
MENDOCINO COUNTY
COMM. EXP. JULY 26, 2006

Drafted By: **BOULA SOUTHIVONG**    [ ] Check if Construction Loan

Loan Number: **0064154719**

2006-09087
Pg:22/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 22 of 28
Order: 100041863 Comment:

**EXHIBIT A**

**PROPERTY DESCRIPTION**

The legal description of the Property Address ("Land") is typed below or please see attached legal description:

LEGAL ATTACHED HERETO AND MADE A PART THEREOF:

2006-09087
Pg:23/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 23 of 28
Order: 100041863 Comment:

0064154719

# MANUFACTURED HOME AFFIDAVIT OF AFFIXATION

Record and Return [ ] by Mail [ ] by Pickup to:

WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD

EAGAN, MN 55121

This Instrument Prepared By:

BOULA SOUTHIVONG

Preparer's Name

16644 WEST BERNARDO DR., STE 101

Preparer's Address 1

SAN DIEGO, CA 921270000

Preparer's Address 2

Loan Number

**ATTENTION COUNTY CLERK:** This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Page 1 of 5     Initial: _SNC_

NMFL # 711* (MAHA) Rev 02/06

2006-09087
Pg:24/28

STACEY A. MCDORMAN

_____

_____
                    [type the name of each Homeowner signing this Affidavit]:
being duly sworn, on his or her oath state as follows:

1.    Homeowner owns the manufactured home ("Home") described as follows:

| USED | 1978 SKYLINE | | SKYLINE 819 | 048 x 024 |
|------|--------------|---|-------------|-----------|
| New/Used | Year | Manufacturer's Name | Model Name or Model No. | Length x Width |

| 0447 AN | | 0447 AN | | | |
|---------|---|---------|---|---|---|
| Serial No. | | Serial No. | | Serial No. | Serial No. |

2.    The Home was built in compliance with the federal Manufactured Home Construction and Safety Standards Act.

3.    If the Homeowner is the first retail buyer of the Home, Homeowner is in receipt of (i) the manufacturer's warranty for the Home, (ii) the Consumer Manual for the Home, (iii) the Insulation Disclosure for the Home, and (iv) the formaldehyde health notice for the Home.

4.    The Home is or will be located at the following "Property Address":
1960 FOOTHILL DRIVE, REDWOOD VALLEY, MENDOCINO, CA 95470
Street or Route, City, County, State Zip Code

5.    The legal description of the Property Address ("Land") is:
LEGAL ATTACHED HERETO AND MADE A PART THEREOF:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

6.    The Homeowner is the owner of the Land or, if not the owner of the Land, is in possession of the real property pursuant to a lease in recordable form, and the consent of the lessor is attached to this Affidavit.

7.    The Home [___] is [___] shall be anchored to the Land by attachment to a permanent foundation, constructed in accordance with applicable state and local building codes and manufacturer's specifications in a manner sufficient to validate any applicable manufacturer's warranty, and permanently connected to appropriate residential utilities (e.g., water, gas, electricity, sewer) ("Permanently Affixed"). The Homeowner intends that the Home be an immoveable fixture and a permanent improvement to the Land.

ATTENTION COUNTY CLERK: This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Page 2 of 5    Initial: _____
NMFL # 7111 (MAHA) Rev 02/06

2006-09087
Pg:25/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 25 of 28
Order: 100041863 Comment:

8. The Home shall be assessed and taxed as an improvement to the Land.

9. Homeowner agrees that as of today, or if the Home is not yet located at the Property Address, upon the delivery of the Home to the Property Address:

   (a) All permits required by governmental authorities have been obtained;

   (b) The foundation system for the Home was designed by an engineer to meet the soil conditions of the Land. All foundations are constructed in accordance with applicable state and local building codes, and manufacturer's specifications in a manner sufficient to validate any applicable manufacturer's warranty.

   (c) The wheels, axles, towbar or hitch were removed when the Home was, or will be, placed on the Property Address; and

   (d) The Home is (i) Permanently Affixed to a foundation, (ii) has the characteristics of site-built housing, and (iii) is part of the Land.

10. If the Homeowner is the owner of the Land, any conveyance or financing of the Home and the Land shall be a single transaction under applicable state law.

11. Other than those disclosed in this Affidavit, the Homeowner is not aware of (i) any other claim, lien or encumbrance affecting the Home, (ii) any facts or information known to the Homeowner that could reasonably affect the validity of the title of the Home or the existence or non-existence of security interests in it.

12. A Homeowner shall initial only one of the following, as it applies to title to the Home: **[Closing and Agent: please refer to the Manufactured Home and Land Supplemental Closing Instructions for completion instructions]:**

   [___] The Home is not covered by a certificate of title. The original manufacturer's certificate of origin, duly endorsed to the Homeowner, is attached to this Affidavit, or previously was recorded in the real property records of the jurisdiction where the Home is to be located.

   [___] The Home is not covered by a certificate of title. After diligent search and inquiry, the Homeowner is unable to produce the original manufacturer's certificate of origin.

   [___] The manufacturer's certificate of origin and/or certificate of title to the Home [ ] shall be [ ] has been eliminated as required by applicable law.

   [___] The Home shall be covered by a certificate of title.

13. This Affidavit is executed by Homeowner(s) pursuant to applicable state law.

**ATTENTION COUNTY CLERK:** This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Page 3 of 5      Initial: _[signature]_

NMFL # 7111 (MAHA) Rev 02/06

IN WITNESS WHEREOF, Homeowner(s) has executed this Affidavit in my presence and in the presence of the undersigned witnesses on this _2nd_ day of _May_ , _2006_

_Stacey A. McDorman_
_____    _____
Homeowner #1 (SEAL)                              Witness
STACEY A. MCDORMAN

_____    _____
Homeowner #2 (SEAL)                              Witness

_____    _____
Homeowner #3 (SEAL)                              Witness

_____    _____
Homeowner #4 (SEAL)                              Witness


STATE OF _California_        )
                             ) ss.:
COUNTY OF _Mendocino_        )

On the _2nd_ day of _May_ in the year _2006_

before me, the undersigned, a Notary Public in and for said State, personally appeared
_Stacey A. McDorman_ ,
personally known to me ~~or proved to me on the basis of satisfactory evidence~~ to be the individual(s) whose name(s) (s)are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_Evan P. Hennessey_
_____    _____
Notary Signature                                 Notary Printed Name

Notary Public; State of _California_       Qualified in the County of _Mendocino_

My commission expires: _7/26/06_

Official Seal:

EVAN P. HENNESSEY
COMM. # 1266574
NOTARY PUBLIC-CALIFORNIA
MENDOCINO COUNTY
COMM. EXP. JULY 26, 2006

**ATTENTION COUNTY CLERK:** This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Page 4 of 5
NMFL # 7111 (MAHA) Rev 02/06



**Lender's Statement of Intent:**

The undersigned ("Lender") intends that the Home be an immoveable fixture and a permanent improvement to the Land.

PRIVATE MORTGAGE ADVISORS, LLC
_____

Lender

By: _____
     Authorized Signature

STATE OF _____    )
                           ) ss.:

COUNTY OF _____   )

    On the _____ day of _____ in the year _____
before me, the undersigned, a Notary Public in and for said State, personally appeared
_____,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____     _____
Notary Signature                       Notary Printed Name

Notary Public; State of _____     Qualified in the County of _____

My commission expires: _____

Official Seal:

Drafted By: **BOULA SOUTHIVONG**_____   [ ] Check if Construction Loan

Loan Number: **0064154719**_____

**ATTENTION COUNTY CLERK:** This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Page 5 of 5    Initial: _____
NMFL # 7111 (MAHA) Rev 02/06

2006-09087
Pg:28/28

Description: Mendocino,CA Document-Year Docid 2006.9087 Page: 28 of 28
Order: 100041863 Comment:

2007-15561
Pg: 1/3

2007-15561
Recorded at the request of
US BK HOME MTG
08/20/2007 11:46A
Fee: 13.00 No of Pages: 3

OFFICIAL RECORDS
Marsha A Wharff, Clerk-Recorder
Mendocino County, CA

When recorded mail to:

US Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 42301
Prepared By: Becky White
Loan # 6912012557
Borrower:
S. McDorman

# ASSIGNMENT OF DEED OF TRUST

## DO NOT REMOVE

### This is part of the official document.

Description: Mendocino,CA Document-Year Docid 2007.15561 Page: 1 of 3
Order: 100041863 Comment:

*Prepared by Becky White*

RETURN TO:
U.S. Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 423010
Attn: Linda Dant
**MERS Phone # 888-679-6377**

MIN #1000212691201255574

PRIVATE MORTGAGE ADVISORS, LLC

Assignment of ~~Mortgage~~/ Deed
of Trust

Pool #:                LPO #:                Loan #:

For value received,        PRIVATE MORTGAGE ADVISORS, LLC
100 South Fifth Street, Minneapolis, MN 55402 hereby sells, assigns and transfers to:
**Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, Flint, Michigan 48501-2026, its successors and assigns**

its successors and assigns, all its right, title and interest in and to a certain mortgage/deed of trust executed by:
STACEY A. MCDORMAN, ~~A SINGLE PERSON~~ AN UNMARRIED PERSON

and bearing the date the ___27___ day of ___APRIL___ Year __2006__ And
recorded in the office of the Recorder of ___MENDOCINO___ County,
State of ___CALIFORNIA___ in Book ___ at Page ___
as Document No. 2006-09087 on the _9th_ day of MAY A.D. 2006
Signed the ___11___ day of ___MAY___ A.D. __2006__ .

PRIVATE MORTGAGE ADVISORS, LLC

Legal Description Attached
Exhibit "A"

NATHANIEL SIMAR

Title    VICE PRESIDENT OF LOAN
         DOCUMENTATION

State of    **MINNESOTA**      }
County of   **HENNEPIN**       } SS
On this    ___11___ Day of ___MAY___ A.D. __2006__ before me, a Notary Public,
personally appeared    NATHANIEL SIMAR    100 South Fifth Street, Minneapolis, MN 55402
to me known, who being duly sworn, did say that (he/she) is the    VICE PRESIDENT OF LOAN
                                                                    DOCUMENTATION
of PRIVATE MORTGAGE ADVISORS, LLC, and that said instrument was signed on behalf of said company.

~~PREPARED BY: Joseph Asante~~

NOTARY PUBLIC

2007-15561
Pg:2/3



KEVIN J. RUDEEN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

Description: Mendocino,CA Document-Year Docid 2007.15561 Page: 2 of 3
Order: 100041863 Comment:

Case: 10-11872   Doc# 12-5   Filed: 07/09/10   Entered: 07/09/10 13:37:26   Page 31

# Exhibit A

**DESCRIPTION:**

THE FOLLOWING DESCRIBED PROPERTY IN THE UNINCORPORATED AREA OF REDWOOD VALLEY, COUNTY OF MENDOCINO, STATE OF CALIFORNIA:

PARCEL ONE: BEGINNING AT THE NORTHWEST CORNER OF THE LANDS CONVEYED TO TOMMY KENT AMES, ET AL, BY DEED RECORDED JANUARY 21,1966 IN BOOK 708 OFFICIAL RECORDS, PAGE 204, MENDOCINO COUNTY; THENCE NORTH 89 DEGREES 56 MINUTES 40 SECONDS WEST, 106.77 FEET, MORE OR LESS TO A POINT WHICH IS SOUTH 89 DEGREES 56 MINUTES 40 SECONDS EAST, AND EQUIDISTANT FROM SAID NORTHWEST CORNER OF AMES AND FROM THE NORTHEAST CORNER OF THE LANDS CONVEYED TO ALRIK J. MONSTROM, ET UX, BY DEED RECORDED NOVEMBER 14,1963 IN BOOK 643 OFFICIAL RECORDS, PAGE 116, MENDOCINO COUNTY; THENCE SOUTHERLY ON A LINE WHICH IS EQUIDISTANT FROM THE EAST LINE OF SAID MONSTROM PROPERTY AND THE WEST LINE OF SAID AMES PROPERTY, 458 FEET, MORE OR LESS TO A POINT ON THE SOUTH LINE OF THE LANDS OF ADAMS AS DESCRIBED IN THE DEED OF TRUST, RECORDED IN BOOK 744, PAGE 492, OFFICIAL RECORDS OF MENDOCINO COUNTY, WHICH POINT IS EQUIDISTANT FROM THE SOUTHEAST CORNER OF SAID MONSTROM PROPERTY AND THE SOUTHWEST CORNER OF SAID AMES PROPERTY; THENCE SOUTH 89 DEGREES 36 MINUTES 50 SECONDS EAST, 106 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF SAID LANDS OF AMES; THENCE NORTH 0 DEGREES 23 MINUTES 10 SECONDS EAST, 458.97 FEET ALONG THE EAST LINE OF SAID AMES PROPERTY TO THE POINT OF BEGINNING.

PARCEL TWO: AN EASEMENT OR RIGHT OF WAY, FOR INGRESS AND EGRESS OVER AND ALONG THE FOLLOWING DESCRIBED REAL PROPERTY: BEGINNING AT THE SOUTHWEST CORNER OF LOT 10, OF THE SAID VALLEY ACRES, A SUBDIVISION; THENCE NORTH 89 DEGREES 36 MINUTES 50 SECONDS WEST, TO THE SOUTHWEST CORNER OF THE ABOVE DESCRIBED PROPERTY; THENCE SOUTH 0 DEGREES 23 MINUTES 10 SECONDS WEST, 50.00 FEET; THENCE SOUTH 89 DEGREES 36 MINUTES 50 SECONDS EAST, 779.20 FEET; THENCE ALONG A CURVE TO THE RIGHT, WITH A RADIUS OF 25 FEET, THROUGH AN ANGLE OF 90 DEGREES , A DISTANCE OF 39.27 FEET TO A POINT IN THE WEST TINE OF THE COUNTY ROAD; THENCE NORTH 0 DEGREES 23 MINUTES 10 SECONDS EAST, 100 FEET; THENCE ALONG A CURVE TO THE RIGHT, FROM A TANGENT WHICH BEARS SOUTH 0 DEGREES 23 MINUTES 10 SECONDS WEST, WITH A RADIUS OF 25 FEET, THROUGH AN ANGLE OF 90 DEGREES, A DISTANCE OF 39.27 FEET; THENCE NORTH 89 DEGREES 36 MINUTES 50 SECONDS WEST, 353.10 FEET TO THE POINT OF BEGINNING.

PARCEL THREE: TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR ALL ROAD AND UTILITY PURPOSES, 14 FEET WIDE LYING 7 FEET EACH SIDE OF THE WEST LINE OF THE ABOVE DESCRIBED PARCEL ONE AND EXTENDING THE FULL LENGTH THEREOF, EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCEL ONE.

APN: 160-140-19



DIT
2006-09087
Pg:16/28

2007-15561
Pg:3/3

tax_prelim_lenders_choice.doc   rev.3/13/2006   Page 5 of 11